```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                         WESTERN DIVISION


LEE REDDIX                                              PLAINTIFF

VS.                        CIVIL ACTION NO. 5:10-cv-187(DCB)(RHW)

CORRECTIONS CORPORATION OF AMERICA                      DEFENDANT
```

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the Court on the defendant's motion for summary judgment **(docket entry 22)**. Having carefully considered the motion and response, the memoranda and applicable law, and being fully advised in the premises, the Court finds as follows:

In June of 2003, Corrections Corporation of America ("CCA") hired the plaintiff, Lee Reddix ("Reddix"), as a Correctional Officer at its Tallahatchie County Correctional Facility ("TCCF"). The next month, CCA promoted Reddix to Case Manager, and later promoted him to Chief of Security.  In February of 2008, CCA terminated Reddix for insubordinate behavior toward his supervisor. Reddix filed an internal grievance protesting the termination of his employment and requesting reinstatement. On or about April 20, 2008, CCA Vice-President Jimmy Turner reviewed Reddix's grievance and reinstated him as Chief of Security, but not at TCCF. CCA transferred Reddix to the Wilkinson County Correctional Facility ("WCCF").

The termination that forms the basis of this lawsuit occurred in May of 2010 when Reddix was terminated from WCCF for multiple

violations of CCA's Code of Conduct, including unprofessional and retaliatory treatment toward staff.  Declaration of Jimmy Turner, ¶ 6.  Specifically, during a September 2009 Cultural Assessment[1] conducted at WCCF, and a March 2010 follow-up to the Cultural Assessment, a number of WCCF employees complained about Reddix's treatment of subordinate employees and staff.  Id. at ¶10.  The employees reported that Reddix refused to speak to them, retaliated against them when they voiced their opinions, accused them of lying when they called in sick, used post assignments as a punishment tool, created division among staff by showing favoritism, and was generally harsh, unpleasant and unprofessional toward the staff.  Id.  One employee reported that Reddix had attempted to find out who had made negative comments about him during the Cultural Assessment so that he could retaliate against the person complaining.  Id.

CCA initiated an investigation into Reddix's conduct and his treatment of staff.  Id. at ¶ 11.  Because the allegations were serious and made against a high-ranking member of the management team, CCA retained an outside company experienced in investigating employment related matters, Verita, LLC, to conduct the

---

[1] CCA's Cultural Assessments are periodically conducted at CCA facilities (1) to gauge the level of employee satisfaction, and/or (2) when there seems to be an unusually high level of employee concern regarding the workplace.  The purpose of the review is to allow employees an opportunity to raise their concerns regarding facility operations or management in a confidential setting and without fear of retaliation.  Turner Declaration, ¶ 10.

investigation.  Id.  CCA placed Reddix on paid administrative leave pending the outcome of Verita's investigation.  Verita also interviewed Reddix as a part of its investigation.  Id.  Ultimately, Verita's investigation substantiated the allegations that Reddix treated his subordinates in an unprofessional and disrespectful manner that violated CCA's Code of Conduct.  Id. at ¶12; Verita Investigative Report to CCA, March 24, 2010.  Jack Garner, CCA's Managing Director for the division, recommended to CCA Vice-President Turner that CCA terminate Reddix's employment.  Id., Attachment 1.

In its motion for summary judgment pursuant to Fed.R.Civ.P. 56, CCA asserts that the undisputed record evidence demonstrates that there is no genuine issue as to any material fact, and that CCA should be granted judgment as a matter of law.  Summary judgment is designed "to secure the just, speedy, and inexpensive determination of every action."  Fed.R.Civ.P. 1; Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)(citation and internal quotation omitted); see also Berry v. Armstrong Rubber Co., 780 F.Supp. 1097, 1099 (S.D. Miss. 1991), aff'd, 989 F.2d 822 (5th Cir. 1993).

The moving party bears the initial burden of establishing the absence of genuine issues of material fact.  Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 178 (5th Cir. 1990).  Once the burden of the moving party is discharged, the burden shifts to the nonmoving party to go beyond the pleadings and show that

summary judgment is inappropriate.  Lavespere, 910 F.2d at 178.  The nonmoving party is obligated to oppose the motion either by referring to evidentiary material already in the record or by submitting additional evidentiary documents which set out specific facts indicating the existence of a genuine issue for trial.  Fields v. City of South Houston, 922 F.2d 1183, 1187 (5th Cir. 1991).  If the nonmovant satisfies its burden, summary judgment will not be granted.  Id.

Summary judgment is available in employment discrimination cases, see, e.g., Slaughter v. Allstate Ins. Co., 803 F.2d 857, 861 (5th Cir. 1986), and is appropriate where "critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates judgment in favor of the movant."  Armstrong v. City of Dallas, 997 F.2d 62, 67 (5th Cir. 1993).  The Fifth Circuit has also held that summary judgment is appropriate where the plaintiff fails to show a genuine issue of fact on the pretext issue.  See, e.g., Amburgey v. Corhart Refractories Corp., Inc., 936 F.2d 805, 813 (5th Cir. 1991); Hanchey v. Energas Co., 925 F.2d 96 (5th Cir. 1990).

By stipulation, the parties have agreed that Reddix is no longer pursuing the following claims against CCA: (1) claim for employee handbook violation; (2) Family Medical Leave Act claim; and (3) race discrimination claim.  Therefore, the sole remaining

claim in this lawsuit is for unlawful retaliation under Title VII of the Civil Rights Act of 1964.  Retaliation is prohibited under § 704(a) of Title VII, which reads as follows:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by Title VII or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under Title VII.

The method of proving retaliation is similar to that used to prove other Title VII disparate treatment cases.  To make out a prima facie case under the McDonnell Douglas burden-shifting framework, a plaintiff must show: "(1) that he engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action."  Gee v. Principi, 289 F.3d 342, 345 (5th Cir. 2002)(quoting Raggs v. Miss. Power & Light Co., 278 F.3d 463, 471 (5th Cir. 2002)).

In Section III(B) of his brief, the plaintiff begins with a general discussion of his job performance prior to his 2010 termination.  He then turns to his frustrations about inadequate secretarial support at WCCF, claiming that Warden Jacquelyn Banks did not find or assign him a replacement secretary soon enough.  The plaintiff offers two instances he claims are "protected activities" under Title VII: (1) in January of 2010, he filed an employee grievance claiming that several CCA employees (including

Warden Banks) authorized or acquiesced to the use of force to compel inmate Corey Baker to submit to a haircut without due process, but only Reddix (who administered the force) was reprimanded; and (2) In February of 2010, Reddix made a hotline complaint to CCA's corporate headquarters complaining about the same use of force incident and Reddix's resulting administrative reprimand.

Neither instance, nor the plaintiff's supporting documentation, contain any evidence of a "protected activity." The plaintiff makes no allegations about unlawful or discriminatory employment practices. In both the grievance and the subsequent hotline complaint, Reddix merely denies violating the CCA use of force policy, contends that the written reprimand was unwarranted, and insists that he should not have been written up, or alternatively that other employees should have been written up as well.

The act of filing an employee grievance or complaint in and of itself is not a "protected activity" under Title VII. In order to show a "protected activity," a plaintiff must allege that he has "(1) opposed any practice made an unlawful employment practice by [Title VII], or (2) made a charge, testified, assisted, or participated in any manner in a Title VII investigation, proceeding, or hearing." Rast v. Ryan's Restaurant Group, Inc., 2011 WL 4455247, *7 (N.D. Miss. Sept. 23, 2011)(citing Grimes v.

Tex. Dept. of Mental Health, 102 F.3d 137, 140 (5th Cir. 1996)). "We have consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity." Davis v. Dallas Indep. School Dist., 448 Fed.Appx. 485, 493 (5th Cir. 2011)(unpublished).

The plaintiff's grievance and hotline complaint merely challenge an administrative reprimand for the unauthorized use of force against an inmate. They do not oppose an unlawful employment practice under Title VII. The plaintiff has therefore failed to meet the first prong of his prima facie case.

In Section III(C) of his brief, Reddix describes his work relationship with Warden Jacquelyn Banks at WCCF, as well as his previous relationship with Warden Banks' husband, Wendall Banks, Chief of Security at TCCF. According to the plaintiff, his adverse relationship with Wendall Banks influenced Warden Banks' treatment of him at WCCF. Reddix alleges that the following instances constitute adverse employment actions:

(1) Warden Banks would "not allow [Reddix] to go home on weekends even though he wasn't on duty." Pl. Brief p. 15.

(2) Plaintiff suffered an "inability to obtain clerical help from Warden Banks." Pl. Brief, p. 15.

(3) Victor Vines prepared a written reprimand against the plaintiff based on the Corey Baker haircut incident, even though a previous similar use of force did not result in a reprimand. Pl. Brief, p.

18.

(4) Warden Banks approved the written reprimand against the plaintiff for use of force, even though a previous similar use of force did not result in a reprimand.  Pl. Brief p. 20.

(5) The plaintiff overheard Leon Perry (his subordinate) state that "he was going to get Lee Reddix for filing complaints."  Pl. Brief p. 21.

(6) The plaintiff states that Velvetta Porter, a former employee of WCCF, heard Leon Perry call plaintiff a "MF" and an "SOB" and state that "he wished he could choke him."  Pl. Brief, p. 21.

The Supreme Court, in <u>Burlington Northern and Santa Fe Railway Co. v. White</u>, 548 U.S. 53 (2006), stated that an adverse action must be "materially adverse" to be actionable.  <u>Id</u>. at 68.  A determination of material adversity is commonly decided as a matter of law by the trial court.  See <u>Magiera v. City of Dallas</u>, 389 Fed.Appx. 433, 437 n.3 (5th Cir. 2010)(unpublished). To demonstrate that a retaliatory action was "materially adverse," the plaintiff must show that the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Burlington Northern</u>, 548 U.S. at 68 (quotations omitted).  The materiality standard is intended "'to separate significant from trivial harms' and 'filter out complaints attacking the ordinary tribulations of the workplace.'"  <u>Stewart v. Miss. Transp. Comm'n</u>, 586 F.3d 321, 331 (5th Cir. 2009)(quoting <u>Burlington Northern</u>, 548

U.S. at 68).  The Supreme Court recognizes that "petty slights, minor annoyances, and simple lack of good manners" will not deter victims of discrimination from complaining to the Equal Opportunity Employment Commission ("EEOC").  Burlington Northern, 548 U.S. at 68.

The instances alleged by the plaintiff do not constitute "materially adverse employment actions" under Title VII.  Being "chastised by superiors and ostracized by co-workers" are not materially adverse actions.  Stewart, 586 F.3d at 331-32.  The same is true for rude treatment, Aryain v. Wal-Mart Stores Texas LP, 534 F.3d 473, 485 (5th Cir. 2008), disciplinary write-ups, and micro-managing of the plaintiff's performance by his supervisors.  Earle v. Aramark Corp., 247 Fed.Appx. 519, 524 (5th Cir. 2007) (unpublished).  None of the alleged acts of Warden Banks, Victor Vines, or Leon Perry constitutes a materially adverse employment action.

The only instance of a "protected activity" mentioned by the plaintiff in his brief is his internal grievance protesting his February 2008 termination at TFFC.  As a result of the grievance, Reddix was reinstated as Chief of Security.  He does not allege that this protected activity forms part of his prima facie case, nor does he allege any materially adverse employment action by the defendant resulting from the protected activity.  The only materially adverse employment action alleged by the plaintiff is

9

his termination in 2010. However, he does not attempt to causally link his termination to the 2008 grievance. In fact, cases cited by the plaintiff himself hold that three, four and five month time gaps are too long to infer a causal link between protected activity and adverse employment action. See Pl. Brief, pp. 24-25.

Because the plaintiff fails to show any causal link between the 2008 grievance and the 2010 termination, and further fails to show any other protected activity or any other materially adverse employment action, he fails to present a prima facie case. Furthermore, the defendant has articulated a legitimate, non-retaliatory reason for the plaintiff's termination, _i.e._, the plaintiff's lengthy record of policy violations as detailed in the Verita Investigative Report of March 24, 2010. At his deposition, the plaintiff admitted that the actions he was accused of committing would violate the CCA Code of Conduct and the duties of Chief of Security. Reddix Depo., pp. 222-26, 232-34. Finally, even if Reddix had established a prima facie case, he offers no evidence that "the adverse employment action ... would not have occurred 'but for' [the] protected conduct," Septimus v. Univ. of Houston, 399 F.3d 601, 608 (5th Cir. 2005); and he offers no evidence of pretext. In the retaliation context, temporal proximity alone is insufficient to establish pretext. Comans v. Scott County School Dist., 2010 WL 1780205, *7 (S.D. Miss. 2010).

The Court therefore concludes that the undisputed record

10

evidence demonstrates that there is no genuine issue as to any material fact, and that CCA shall be granted judgment as a matter of law.  Accordingly,

IT IS HEREBY ORDERED that the defendant's motion for summary judgment **(docket entry 22)** is GRANTED.

A separate Final Judgment dismissing this case with prejudice will be entered forthwith.

SO ORDERED, this the 30th day of April, 2012.

                                    /s/ David Bramlette
                                    UNITED STATES DISTRICT JUDGE